## AFFIDAVIT OF SPECIAL AGENT PETER MILLIGAN

I, Special Agent Peter Milligan, depose and state as follows:

1. I am presently a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since April 2009 and am currently assigned to the Boston Group VI Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by felons and other prohibited persons, and the use of firearms in drug trafficking/violent crimes, as well as the investigation of laws related to explosives violations and incendiary (arson) fires.

2. I make this affidavit in support of an application for arrest warrants for Gideoni De Oliveira MOUTINHO ("MOUTINHO") and Lucas Henrique Moreira DEPAIVA ("DEPAIVA") for federal firearms violations.

3. There is probable cause to believe that MOUTINHO and DEPAIVA have committed the following federal crimes: (1) engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), and (2) conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371.

4. During this investigation, a Cooperating Witness ("CW-1") made controlled purchases of commercially manufactured firearms and ammunition as well as Privately Made Firearms ("PMF), sometimes referred to as "ghost guns." A PMF does not have a serial number like commercially manufactured firearms. Based on my training and experience, a PMF satisfies the definition of "firearm" for the purposes of 18 U.S.C. § 922(a)(1)(A).

1

5. CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and HSI, and local police departments in the past and continues to do so to the present. CW-1 has a criminal history which includes two adult arrests and no convictions. CW-1 is presently receiving monetary benefits from the ATF. CW-1 is also seeking protection from retaliation based upon CW-1's cooperation with law enforcement in this case, including possible relocation.

6. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I have participated in numerous classes of in-service training relating to firearms/narcotics trafficking investigations and arson and explosives investigations. I have been the affiant and/or participated in the execution of numerous state and federal search and arrest warrants pertaining to violations of the federal firearms, narcotics, arson, and explosives laws. I have participated in dozens of investigations relating to the illegal acquisition and sales of firearms and narcotics. During those investigations, I have participated in surveillance, the purchase of firearms, the purchase of narcotics, the execution of search warrants, and I have interviewed witnesses, suspects, and informants. Through my law enforcement training, participation in undercover purchases of firearms, surveillance of firearms traffickers, interviews of suspects, and participation in search warrants and Title III electronic surveillances, I am familiar with the methods that are most commonly used by unlawful firearms traffickers and people dealing in firearms without a Federal Firearms License. Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws.

7.      The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from a confidential informant, public records, database checks, and other investigations.  The dates and times in this affidavit are approximate.  Because this affidavit is submitted for the limited purpose of supporting issuance of arrest warrants for MOUTINHO and DEPAIVA, I have not presented every fact learned during the investigation, but only that information necessary to fully support probable cause for arrest warrants.

8.      In December of 2023, CW-1 informed investigators that MOUTINHO was a source of supply for illegal firearms for and from members of the Brazilian community. MOUTINHO sent CW-1 multiple text photos of handguns (a 9mm pistol, a .40 caliber pistol, a .380 caliber pistol and a .22 caliber pistol) and two videos of MOUTINHO firing the .22 caliber pistol.  Agents directed CW-1 to arrange the purchase of a handgun from MOUTINHO.

9.      On January 2, 2024, CW-1 made a controlled purchase of a .22 caliber pistol and ammunition from MOUTINHO in Chelsea, Massachusetts.  Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results.  Agents equipped CW-1 with an undercover ("UC") vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with MOUTINHO. Agents then provided CW-1 with official government funds in order to purchase the pistol. Surveillance personnel were assigned to the area of the Home Depot parking lot in Chelsea, Massachusetts.  CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with MOUTINHO in the UC vehicle and purchased a .22 caliber pistol and ammunition.  CW-1 paid MOUTINHO $1150 for the pistol.  During the transaction, CW-1 and

MOUTINHO discussed the future purchase of additional firearms.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with a Browning Arms Company, Model Buck Mark, .22LR caliber pistol, serial number 655NV13909, with two magazines and five (5) rounds of Winchester Super X .22 LR caliber ammunition.  Agents again searched CW-1 for contraband and found none.  Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from MOUTINHO.

10.     On January 9, 2024, CW-1 made a controlled purchase of a 9mm pistol and ammunition from MOUTINHO in Chelsea, Massachusetts.  CW-1 initially arranged to purchase three pistols for $4450.  MOUTINHO could only obtain one of the pistols.  Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results.  Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with MOUTINHO.  Agents then provided CW-1 with official government funds in order to purchase the pistol.  Surveillance personnel were assigned to the area of the Home Depot parking lot in Chelsea, Massachusetts.  CW-1 was under constant surveillance by agents/officers during the operation.  CW-1 met with MOUTINHO in the UC vehicle and purchased a 9mm pistol and ammunition.  CW-1 paid MOUTINHO $1400 for the pistol.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with a Canik, Model METE MC9, 9mm pistol, serial number 23CT01755, 7 rounds of assorted 9mm ammunition (loaded in magazine), and 53 rounds of .22 LR caliber ammunition.  Agents again searched CW-1 for contraband and found none.  Agents have

reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from MOUTINHO.

11.     During the month of February 2024, CW-1 had multiple conversations regarding potential firearms MOUTINHO and his associates had available for sale.   In late February, MOUTINHO sent CW-1 several text pictures and videos of two 9mm pistols and a .380 caliber pistol MOUTINHO had available for sale.   They negotiated a price of $4500 for the three pistols. CW-1 and MOUTINHO agreed to meet at the Stop & Shop parking lot in Malden, Massachusetts.

12.     On February 28, 2024, MOUTINHO told CW-1 that he could only obtain the .380 caliber pistol and one of the 9mm pistols because the possessor/source for the third pistol (9mm with an extended magazine) was unavailable due to a recent arrest in Lowell, Massachusetts. CW-1 arranged to purchase both pistols for $2950.   On the same date, CW-1 and MOUTINHO exchanged phone calls and text messages.   MOUTINHO told the CW he was coming from the Medford, Massachusetts area and had the .380 caliber pistol in his possession and would meet the CW at the Stop & Shop parking lot.   MOUTINHO reported that his associate "Diogo" (later identified as DEPAIVA) was coming from the Quincy, MA area with the 9mm pistol.

13.     On the same date, CW-1 made a controlled purchase of a .380 caliber pistol and ammunition from MOUTINHO and a 9mm pistol from MOUTINHO and DEPAIVA in Malden, Massachusetts.   Prior to the controlled purchases, ATF agents met with and searched CW-1's person for contraband with negative results.   Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transactions with MOUTINHO and DEPAIVA.   Agents then provided CW-1 with official

5

government funds in order to purchase the pistols. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. During the first transaction, MOUTINHO arrived in the parking lot alone. CW-1 met with MOUTINHO in the UC vehicle and purchased a .380 caliber pistol and ammunition. CW-1 paid MOUTINHO $1200 for the pistol. Prior to DEPAIVA's arrival, MOUTINHO directed the CW to pay DEPAIVA $1500 for the 9mm pistol and to provide MOUTINHO with $250. MOUTINHO told the CW he needed to pay DEPAIVA's driver $50. MOUTINHO and DEPAIVA entered the UC vehicle. They drove around the parking lot. During the ride, CW-1 purchased a 9mm pistol from DEPAIVA for $1500. CW-1 provided MOUTINHO with $250. After the transaction CW-1 observed MOUTINHO and DEPAIVA return to their respective vehicles. MOUTINHO left the parking lot and DEPAIVA exited his vehicle and returned to the UC vehicle. DEPAIVA told CW-1 his name was "Lucas" and provided CW-1 with his cell phone number. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with: (1) a SCCY, Model CPX-2, 9mm pistol, serial number C345485; (2) a Izhevsk Mechanical Plant, Baikal IJ-70, .380 caliber pistol, serial number BFE0044 (Importer B West) with three (3) magazines; (3) eighteen (18) rounds of assorted .380 ammunition; and (4) five (5) rounds assorted 9mm ammunition. Agents again searched CW-1 for contraband and found none. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistols and ammunition from MOUTINHO and DEPAIVA.

14. On March 7, 2024, CW-1 made a controlled purchase of a pistol and ammunition from DEPAIVA in Weymouth, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped

CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA. Agents then provided CW-1 with official government funds in order to purchase the pistol. Surveillance personnel were assigned to the area of DEPAIVA's apartment complex parking lot in Weymouth, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with DEPAIVA in the UC vehicle and purchased a pistol and ammunition. CW-1 paid DEPAIVA $1500 for the pistol. During the transaction, DEPAIVA told CW-1 that he obtained his firearms from sources in Worcester, Framingham and Milford. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Ceska Zbrojovka, CZ-52, 7.62x25mm pistol, serial number AZ2264, and three rounds of ammunition. Agents again searched CW-1 for contraband and found none. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from DEPAIVA.

15.     On June 11, 2024, CW-1 made a controlled purchase of a revolver and ammunition from DEPAIVA in Malden, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA. Agents then provided CW-1 with official government funds in order to purchase the revolver and ammunition. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. Upon arrival at the parking lot, CW-1 observed DEPAIVA in a black sedan driven by an

unidentified female.  CW-1 met with DEPAIVA in the UC vehicle and purchased a revolver.  CW-1 paid DEPAIVA $1450 for the revolver.  During their conversation in the UC vehicle, DEPAIVA told CW-1 he was working on getting a 9mm pistol from a different source of supply who had access to thirty firearms.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with a Smith and Wesson, Model 642, .38 special revolver, serial number CXD4286, and five rounds of CBC .38 special ammunition.  Agents again searched CW-1 for contraband and found none.  Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the revolver and ammunition from DEPAIVA.

16. On June 17, 2024, CW-1 made a controlled purchase of a pistol from DEPAIVA in Weymouth, Massachusetts.  Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results.  Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA.  Agents then provided CW-1 with official government funds in order to purchase the pistol.  Surveillance personnel were assigned to the area of DEPAIVA's apartment complex parking lot in Weymouth, Massachusetts.  CW-1 was under constant surveillance by agents/officers during the operation.  CW-1 met with DEPAIVA in the UC vehicle and purchased a pistol.  CW-1 paid DEPAIVA $2200 for the pistol.  DEPAIVA told the CI that he had a new source of supply for firearms.  DEPAIVA stated that it was a different source than the one who provided him with the Smith and Wesson .38 revolver.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with a Glock, Model 17

Gen 5, 9mm pistol, serial number BRYG629.  Agents again searched CW-1 for contraband and found none.  Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol from DEPAIVA.

17.     On July 9, 2024, CW-1 made a controlled purchase of two pistols and ammunition from DEPAIVA in Weymouth, Massachusetts.  Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results.  Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA.  Agents then provided CW-1 with official government funds in order to purchase the pistols and ammunition.  Surveillance personnel were assigned to the area of DEPAIVA's apartment complex parking lot in Weymouth, Massachusetts.  CW-1 was under constant surveillance by agents/officers during the operation.  CW-1 met with DEPAIVA in the UC vehicle and purchased two pistols and ammunition.  CW-1 paid DEPAIVA $4400 for the pistols and ammunition.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with: (1) a Palmetto State Armory, Dagger Compact, 9mm, pistol, serial number FG173897, with a 30-round magazine; (2) a PMF .40 caliber pistol, no serial number (UPPER: Glock, Model 23, serial number AWZ550) with a 30 round magazine; and (3) one round of Remington .38 special caliber ammunition.  Agents again searched CW-1 for contraband and found none.  Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistols and ammunition from DEPAIVA.

18.     On July 22, 2024, CW-1 made a controlled purchase of three pistols and ammunition from DEPAIVA in Weymouth, Massachusetts.  Prior to the controlled purchase,

9

ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA. Agents then provided CW-1 with official government funds in order to purchase the pistols and ammunition. Surveillance personnel were assigned to the area of DEPAIVA's apartment complex parking lot in Weymouth, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with DEPAIVA in the UC vehicle and purchased three pistols and ammunition. CW-1 paid DEPAIVA $6400 for the pistols and ammunition. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with: (1) a SCCY Industries, CPX-2, 9mm pistol, serial number 758303; (2) a Smith & Wesson, M&P 380 Sheild EZ, .380 caliber pistol, serial number RHA6056; (3) a Polymer 80, PMF, PF940C, 9mm pistol, no serial number; (4) an extra SCCY Industries 9mm pistol magazine; (5) seven (7) rounds of assorted 9mm ammunition; and (6) four (4) rounds of assorted .380 caliber ammunition. Agents again searched CW-1 for contraband and found none. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistols and ammunition from DEPAIVA.

19. On July 26, 2024, CW-1 made a controlled purchase of a pistol, ammunition and firearm parts from DEPAIVA in Malden, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA. Agents then provided CW-1 with official government funds in order to purchase the pistol, ammunition and firearm

parts. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with DEPAIVA in the UC vehicle and purchased a pistol, ammunition and firearm parts. CW-1 paid DEPAIVA $2400 for the pistol, ammunition and firearm parts. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with: (1) a Polymer 80, PMF, PF9SS, 9mm pistol, no serial number; (2) thirty (30) rounds of assorted 9mm ammunition; (3) three (3) additional 9mm pistol magazines; (4) a plastic bag containing firearm components (slide, 9mm barrel, trigger assembly, springs, pins and sights); and (5) a brown paper bag containing five (5) spent 9mm shell casings. Agents again searched CW-1 for contraband and found none. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol, ammunition and firearm parts from DEPAIVA.

20. On August 9, 2024, CW-1 made a controlled purchase of a pistol and ammunition from MOUTINHO in Malden, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with MOUTINHO. Agents then provided CW-1 with official government funds in order to purchase the pistol and ammunition. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with MOUTINHO in the UC vehicle and purchased a pistol and ammunition. CW-1 paid MOUTINHO $1800 for the pistol and ammunition. CW-1 left the area and was kept under

surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with Walther, P22, .22 caliber LR, pistol, serial number WA033404, and six round of .22 caliber LR caliber ammunition.  Agents again searched CW-1 for contraband and found none.  Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from MOUTINHO.

21. On August 13, 2024, CW-1 made a controlled purchase of two pistols and ammunition from DEPAIVA in Malden, Massachusetts.  Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results.  Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA.  Agents then provided CW-1 with official government funds in order to purchase the pistols and ammunition. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts.  CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with DEPAIVA in the UC vehicle and purchased two pistols and ammunition.  CW-1 paid DEPAIVA $4400 for the pistols and ammunition.  CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site.  At the meeting site, CW-1 provided agents with: (1) a Taurus, TH40, .40 caliber pistol, serial number SLT00220, with a pistol box containing accessories; and (2) a Glock, 19, 9mm pistol, serial number AFYL979, with a pistol box containing an additional magazine and accessories. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistols and ammunition from DEPAIVA.

22. On August 26, 2024, CW-1 made a controlled purchase of two pistols and ammunition from DEPAIVA in Malden, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with DEPAIVA. Agents then provided CW-1 with official government funds in order to purchase the pistols and ammunition. Surveillance personnel were assigned to the area of the Stop & Shop parking lot in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with DEPAIVA in the UC vehicle and purchased two pistols and ammunition. CW-1 paid DEPAIVA $4200 for the pistols and ammunition. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with; (1) a Glock, Model 19, 9mm, pistol, serial number VHZ197; (2) one Springfield Armory, Hellcat, 9mm, pistol, serial number BB134383; and (3) ten (10) rounds of 9mm ammunition. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistols and ammunition from DEPAIVA.

23. On August 30, 2024, CW-1 made a controlled purchase of a pistol and ammunition from MOUTINHO in Malden, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Agents equipped CW-1 with an UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with MOUTINHO. Agents then provided CW-1 with official government funds in order to purchase the pistol and ammunition. Surveillance personnel were assigned to the area of the Stop & Shop parking lot

in Malden, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with MOUTINHO in the UC vehicle and purchased a pistol and ammunition. CW-1 paid MOUTINHO $2000 for the pistol and ammunition. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Kahr, CW 45, .45 caliber pistol, serial number SF5131, and one round of .45 caliber ammunition. Agents again searched CW-1 for contraband and found none. Agents have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from MOUTINHO.

24. On July 13, 2022, MOUTINHO entered the United States in California. MOUTINHO was determined to be an alien in the United States who had not been admitted or paroled. MOUTINHO was photographed and released into the United States. I have reviewed and compared the abovementioned photo of MOUTINHO to the abovementioned videos of the gun buys on January 2, 2024, January 9, 2024, January 31, 2024, February 28, 2024, August 9, 2024 and August 30, 2024. The photo and the videos are of the same person – Gideoni MOUTINHO.

25. On November 4, 2021, DEPAIVA entered the United States in Texas. DEPAIVA was determined to be an alien in the United States who had not been admitted or paroled. DEPAIVA was photographed and released into the United States. I have reviewed and compared the abovementioned photo of DEPAIVA to the abovementioned videos of the gun buys on February 28, 2024, March 7, 2024, June 11, 2024, June 17, 2024, July 9, 2024, July 22, 2024, July 26, 2024, August 13, 2024 and August 26, 2024. The photo and the videos are of the same person – Lucas Henrique Moreira DEPAIVA.

26. On August 11, 2024, James Diozzi, an ATF Industry Operations Inspector in the Boston Field Office, queried ATF's national data base of all federally licensed firearms dealers, and determined that Gideoni De Oliveira MOUTINHO and Lucas Henrique Moreira DEPAIVA are not a federally licensed firearms dealers.

## CONCLUSION

27. Based on the above, I believe probable cause exists to conclude that from January of 2024 to the present, MOUTINHO and DEPAIVA, without being a federally licensed dealer, did knowingly and willfully engage in the business of dealing in firearms, in violation of 18 U.S.C. §922(a)(1)(A), and, during that same time period, did knowingly combine, conspire, confederate and agree with each other and others, to engage in the business of dealing in firearms without a federally issued license to do so, in violation of 18 U.S.C. §371.

_Peter Milligan /by Paul G. Levenson_
Peter Milligan
Special Agent, ATF

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this  17th   day of September 2024

15